## IN THE CIRCUIT COURT OF MARYLAND
## FOR ANNE ARUNDEL COUNTY

| | |
|---|---|
| VIRGINIA BARTON GRIMM, individually and on behalf of all others similarly situated | Case No.:  C-02-CV-17-001368 |
| Plaintiff | |
| v. | |
| FIRST ADVANTAGE BACKGROUND SERVICES CORP d/b/a FIRST ADVANTAGE Suite 410 140 Fountain Parkway N St. Petersburg, FL 33716 | |
| Serve On: Resident Agent CSC-Lawyers Incorporating Services Company, 7 St. Paul St., Ste 820, Baltimore MD 21202; | |
| *and* | |
| THE BOARD OF TRUSTEES OF THE COMMUNITY COLLEGE OF BALTIMORE COUNTY | |
| Serve on: Stephen J. Nolan, Esq, Chair, Board of Trustees of Community College of Baltimore County 7201 Rossville Blvd. Baltimore, Maryland 21237 | |
| Defendants | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT FOR
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

The Plaintiff, Virginia Barton Grimm, by and through her undersigned counsel,

EXHIBIT 1

sues FIRST ADVANTAGE BACKGROUND SERVICES CORP d/b/a FIRST

ADVANTAGE ("First Advantage") and THE BOARD OF TRUSTEES OF THE

COMMUNITY COLLEGE OF BALTIMORE COUNTY ("CCBC") for violations of the Fair

Credit Reporting Act ("FCRA") and for cause states:

**INTRODUCTION**

1.      The Plaintiff applied for a job at CCBC. As part of the application

procedure, CCBC required that she sign a two-page multi-purpose authorization form,

and CCBC utilized that form in order to procure the Plaintiff's consumer report from

First Advantage for use in CCBC's hiring decision. The form utilized by CCBC does not

comply with the requirements of the Fair Credit Reporting Act. Moreover, the

consumer report provided by First Advantage to CCBC contains information which is

materially false, and which First Advantage refuses to fix. The reinvestigation done by

First Advantage did not comply with the requirements of the FCRA. As a result of the

materially false information provided by First Advantage to CCBC, the Plaintiff was

denied employment at CCBC.

2.      When it passed the Fair Credit Reporting Act, Congress made the following

findings:

> **Consumer reporting agencies have assumed a vital
> role in assembling and evaluating consumer credit
> and other information on consumers.**
>
> **There is a need to insure that consumer reporting
> agencies exercise their grave responsibilities with
> fairness, impartiality, and a respect for the
> consumer's right to privacy.**

15 U.S.C. 1681 (a)(3) and (4). (Emphasis added). To achieve its purpose, Congress

stated that the purpose of the Fair Credit Reporting Act is to:

> ...require that **consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for...personnel...**and other information in a manner which is fair and equitable to the consumer, **with regard to the confidentiality, accuracy, relevance and proper utilization of such information in accordance with the requirements of this title.**

15 U.S.C. 1681 (b).   (Emphasis added).

3.      In this action, the Plaintiff asserts claims for two separate violations of the Fair Credit Reporting Act:

a.   Plaintiff asserts the first claim on an individual basis against First Advantage for its failure to perform a reasonable reinvestigation after the Plaintiff properly disputed inaccurate information, as is required by 15 U.S.C. 1681i.  This failure caused the Plaintiff concrete injury, actual harm, and proximately caused the Plaintiff to sustain economic and non-economic damages.

b.   Plaintiff asserts the second claim against CCBC on a class wide basis because it procured or caused to be procured consumer reports about the Plaintiff and others for employment purposes after requiring her and others without providing the mandatory disclosures required by the Fair Credit Reporting Act, as codified in 15 U.S.C. 1681b(b)(2)(A).  The authorization used by CCBC was also illegal because it contained a liability waiver as part of the authorization.

4.      The CCBC form is titled "Authorization for Release of Information" and among other things, it purports to waive the employer's liability to employment applicants.  As such, the Plaintiff's signature on the form "served simultaneously as an authorization for [the employer] to procure h[er] consumer report, and as a broad release of liability." *Syed v. M-I, LLC*, 853 F.3d 492, 497 (9th Cir. 2017).

5.      The specific language of the waiver is as follows:

> I further authorize CCBC to verify the information supplied
> on my behalf by other persons, and I release CCBC and its
> agents from all liability, claims, and damages with respect to
> the information obtained from any or all of the sources used
> by CCBC.

6.      Plaintiff did not know that by requiring her to sign the two-page multi-

purpose consent form, which also included a liability waiver, CCBC violated her right to

privacy and her rights under the Fair Credit Reporting Act.

7.      The Plaintiff did not know that CCBC's demand that she sign the two-page

multi-consent form violated her rights.  She did not learn of this fact until after CCBC

refused to offer her a job, and after she obtained a copy of it in April, 2017 from her

personnel file, and after First Advantage refused to correct the false information in her

consumer report.

8.      CCBC's two-page multi-purpose consent form violates the Plaintiff's right to

privacy by allowing CCBC to illegally access her credit report in violation of the Fair

Credit Reporting Act.  As was stated recently by the Ninth Circuit Court of Appeals:

> The authorization requirement, § 1681b(b)(2)(A)(ii),
> creates a right to privacy by enabling applicants to withhold
> permission to obtain the report from the prospective
> employer, and a concrete injury when applicants are
> deprived of their ability to meaningfully authorize the credit
> check. By providing a private cause of action for violations of
> Section 1681b(b)(2)(A), Congress has recognized the harm
> such violations cause, thereby articulating a "chain[ ] of
> causation that will give rise to a case or controversy." *See*
> *Spokeo*, 136 S.Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*,
> 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)
> (Kennedy, J., concurring)).

*Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017).

The Ninth Circuit went on to say in conclusion that:

> The FCRA's employment disclosure provision "says what it
> means   and   means   what   it   says." *See   Simmons   v.*

> *Himmelreich*, ––– U.S. ––––, 136 S.Ct. 1843, 1848, 195
> L.Ed.2d 106 (2016). The statute unambiguously bars the
> inclusion of a liability waiver on the same document as a
> disclosure made pursuant to 15 U.S.C. § 1681b(b)(2)(A). M-I
> willfully violated the statute by procuring Syed's consumer
> report without providing a disclosure "in a document that
> consist[ed] solely of the disclosure."

*Id.* at 507.[1]

9.      When the Defendant First Advantage furnished the Plaintiff's consumer

report to CCBC, the First Advantage consumer report contained inaccurate and

materially false information.  Specifically, First Advantage told CCBC that there was a

"high probability" that the Social Security number provided by the Plaintiff on the illegal

authorization form "belongs to another consumer."

10.     The Plaintiff contacted First Advantage on numerous occasions, and

properly disputed the materially false and inaccurate information and provided First

Advantage with written proof that the information reported by First Advantage was

inaccurate and false.

11.     Despite the Plaintiff's full compliance with the dispute procedures set forth

---

[1] As part of its ruling, the Ninth Circuit was in accord with several District Courts:

"We are persuaded by the opinions of a number of other district courts rejecting the argument that a prospective employer's inclusion of a liability waiver in a disclosure made pursuant to 15 U.S.C. § 1681b(b)(2)(A) was not willful as a matter of law. *Harris v. Home Depot U.S.A., Inc.*, 114 F.Supp.3d 868, 870–71 (N.D. Cal. 2015); *Speer v. Whole Foods Mkt. Grp., Inc.*, No. 8:14-cv-3035-T-26TBM, 2015 WL 1456981, at *3 (M.D. Fla. March 30, 2015); *Avila v. NOW Health Grp., Inc.*, No. 14 C 1551, 2014 WL 3537825, at *3 (N.D. Ill. July 17, 2014); *see also Ramirez v. Midwest Airlines, Inc.*, 537 F.Supp.2d 1161, 1171 (D. Kan. 2008) (holding that defendant could not avoid liability for willful violation as a matter of law under the FCRA, 15 U.S.C. § 1681c(g), because there was "no plausible alternative reading of the statute in the foundation of the statutory text"). For the reasons described in Part IV.A.4, we disagree with the contrary analysis of the court in *Smith*, 2012 WL 3645324, at *6."

*Syed v. M-I, LLC*, 853 F.3d 492, 506 (9th Cir. 2017)

in the Fair Credit Reporting Act, First Advantage did not employ reasonable reinvestigation procedures to insure the maximum possible accuracy of the information it provided about the Plaintiff, and First Advantage refused to correct the inaccurate and false information.

12.     CCBC told the Plaintiff that they would not hire her unless and until her "credit check" was "approved" by First Advantage.

13.     CCBC refused to hire the Plaintiff unless First Advantage corrected the inaccurate and materially false information it provided about the Plaintiff.

14.     Because First Advantage refused to correct the inaccurate and false information after given an opportunity to do so, CCBC did not hire Plaintiff.

15.     As a direct and proximate result the use of an illegal authorization and disclosure form, CCBC procured a consumer report from First Advantage that contained materially false and inaccurate information about the Plaintiff.

16.     As a direct and proximate result of the failure of First Advantage to comply with the Fair Credit Reporting Act, the Plaintiff did not get a job at CCBC, and the Plaintiff has suffered concrete and legally cognizable harm in the form of lost job opportunity, lost wages and emotional distress.

**JURISDICTION**

17.     This court has subject matter jurisdiction over these claims under 15 U.S.C.A. § 1681p.

18.     This court has personal jurisdiction over the defendants because they regularly conduct business in this State.

19.     Venue is proper in this court pursuant to Md. Code Ann. Cts. & Jud. Proc. Sec. 6-201(b) because it is court of competent jurisdiction, the harm occurred in this

State, and the defendants can be sued in any county in which any of them could be sued. Because First Advantage is licensed in Maryland and does business throughout the state, venue in this county is proper.

## PARTIES

### Virginia Grimm

20.    The Plaintiff is an adult resident of Baltimore County, Maryland.

21.    The Plaintiff is a "consumer" as that term is defined by 15 U.S.C. 1681a(c).

22.    The Plaintiff suffered an "Adverse Action" as that term is defined in 15 U.S.C. 1681a(k)(1)(B)(ii).

### First Advantage

23.    Defendant First Advantage is a Consumer Reporting Agency, and is licensed as such in Maryland.[2]

24.    According to its website, First Advantage:

- has a "Global Reach, Now in 26 locations, with 5,000 employees across 14 countries." https://www.fadv.com/customers.aspx.

- Has "become a trusted partner for over 35,000 organizations worldwide...." https://www.fadv.com/why-first-advantage.aspx

- offers "a single product worldwide Including [sic] 96% of all countries and territories.... We are committed to providing effortless, global background checks...." https://www.fadv.com/why-first-advantage.aspx

- conducts "over 55 million international background screens annually to 17.2 million applicants." https://www.fadv.com/about-us.aspx

---

[2] https://www.dllr.state.md.us/cgi-bin/fin_reg_el/rel2/FinReg_search.cgi?calling_app=Query::PQ_query3&cat=08&num=160&CGISESSID=29cf13a2e603f820a374c0c3d1b7ef20

25.     The address listed on the Maryland license for First Advantage, and the address of its Corporate Headquarters is: 1 Concourse Parkway NE, Ste. 200, Atlanta, GA 30328.  It is a Florida corporation with its principal place of business at 140 Fountain Parkway N., Suite 410, St. Petersburg FL 33716.  The Maryland registered agent is CSC-Lawyers Incorporating Service Company, 7 St. Paul St., Suite 820, Baltimore, MD 21202.

26.     First Advantage contracts with employers throughout the state of Maryland, around the country and throughout the world to provide consumer reports for the purpose of background screening for employment applicants.

27.     In touting its service on its website, First Advantage states: "As the largest background screening provider in the world, we have one of the highest verification rates in the industry."  https://www.fadv.com/solutions/employment-background-checks.aspx

28.     First Advantage has a long and established pattern and practice of violating the Fair Credit Reporting Act.[3]

---

[3] This Woman Learned The Hard Way That Background Checks May Contain Huge Errors
http://www.businessinsider.com/this-woman-learned-the-hard-way-that-background-checks-may-contain-huge-errors-2011-12

Man Denied Jobs Over Alleged False Report Files Federal Suit
http://www.ctlawtribune.com/id=1202782590474/Man-Denied-Jobs-Over-Alleged-False-Report-Files-Federal-Suit?mcode=0&curindex=0

First Advantage Background Services, Rite Aid accused of denying opportunity due to false information
http://pennrecord.com/stories/511038584-first-advantage-background-services-rite-aid-accused-of-denying-opportunity-due-to-false-information

Lowe's Pays $2.2M To Settle Applicant Background Check Suit
https://www.law360.com/articles/858488/lowe-s-pays-2-2m-to-settle-applicant-

29.     First Advantage is a "person" as that term is defined by 15 U.S.C. 1681a(b).

---

background-check-suit

Lawsuit over flawed background check can proceed
http://www.washingtontimes.com/news/2014/mar/28/lawsuit-over-flawed-background-check-proceeds

First advantage reports steady rise in overall discrepancies in India
http://www.thehansindia.com/posts/index/Business/2016-06-28/First-advantage-reports-steady-rise-in-overall-discrepancies-in-India/238225

See also:

*Williams v. First Advantage LNS Screening Sols., Inc.*, No. 1:13CV222-MW/GRJ, 2017 WL 819486 (N.D. Fla. Mar. 2, 2017)(upholding jury verdict for reporting criminal records for a different person mistakenly identified as the applicant);

*Taylor v. First Advantage Background Servs. Corp*, 207 F. Supp. 3d 1095 (N.D. Cal. 2016)(job offer rescinded after First Advantage provided erroneous background check);

*Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-CV-04684-JSC, 2016 WL 4577257, (N.D. Cal. Sept. 2, 2016)(First Advantage provided credit report to employer without employer's certification "that it had complied with the disclosure and authorization requirements set forth in Section 1681b(b)(1) of the FCRA") *Id.* at *1.

*Lang v. First Advantage Background Servs. Corp*, No. 15-CV-2436, 2016 WL 740288 (N.D. Ohio Feb. 24, 2016)(mistaken report of a criminal conviction);

*Bolton v. First Advantage LNS Screening Sols., Inc.*, No. 14 CIV. 5735 PAC, 2015 WL 4039834 (S.D.N.Y. July 1, 2015)(inaccurate criminal history report);

*Goode v. First Advantage Lns Screening Sols., Inc.*, No. CV 11-2950, 2014 WL 12616733 (E.D. Pa. Aug. 1, 2014)(approved class action settlement regarding derogatory or negative information from the Retail Theft Contributory Database).

30.     First Advantage is a "consumer reporting agency" as that term is defined in 15 U.S.C. 1681a(f).  According to its website, "First Advantage is a consumer reporting agency that provides information to employers and to the multi-family housing industry. Employers may obtain your consumer report also know [sic] as a background screening report, to assist them in making employment decisions.  Housing providers may obtain your consumer report to assist them in making leasing decisions."

https://www.fadv.com/candidates.aspx

31.     First Advantage is also a "reseller" as that term is defined in 15 U.S.C. 1681a(u).  According to its website, "First Advantage is also a reseller of information maintained by the three national credit reporting agencies (CRA's): Equifax®, Experian® and TransUnion®; however, it is important to understand that information from the credit bureaus is not maintained by First Advantage."

https://www.fadv.com/candidates.aspx

32.     First Advantage provided to CCBC a "consumer report" as that term is defined in 15 U.S.C. 1681a(d)(1)(B) about the Plaintiff and the other class members.

33.     The noncompliance of First Advantage with the Fair Credit Reporting in relation to the Plaintiff and the failure to reinvestigate as required by the statute was willful, or in the alternative it was negligent.

**Community College of Baltimore County**

34.     Defendant CCBC is the board of trustees of a community college operating under Title 16 of Md. Code Ann., Education Article.

35.     CCBC is a "person" as that term is defined in 15 U.S.C. 1681a(b).

36.     CCBC procured for employment purposes the "consumer report" of the Plaintiff and class members.

37.     When CCBC procured for employment purposes the "consumer report" of the Plaintiff and class members, it did so in violation of 15 U.S.C. 1681b(2)(A), because CCBC failed to disclose "in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes." *Id.*

38.     CCBC also included a liability waiver in its authorization form.

39.     CCBC took an "adverse action" against the Plaintiff as that term is defined is 15 U.S.C. 1681a(k)(1)(B)(ii).

40.     CCBC's violation of the Fair Credit Reporting Act was willful in relation to the Named Plaintiff and the class members.

**FACTS**

**Community College of Baltimore County**

41.     When the Plaintiff applied for a job as a Part Time Academic Adviser at CCBC, she complied with CCBC's requirement to sign and submit to CCBC various forms provided to her by CCBC.

42.     CCBC represented that signing and submitting the forms was required of all applicants who wished to be considered for a job at CCBC.

43.     The Plaintiff complied with all CCBC application requirements, and in the process, on January 20, 2017 she signed and submitted a two-page form on CCBC stationary titled: "AUTHORIZATION FOR RELEASE OF INFORMATION." A copy of the Authorization (with all personal information redacted) is attached hereto as **EXHIBIT 1**.

44.     The Authorization indicates at the bottom that it is a confidential document from CCBC Human Resources.

45.     Upon information and belief, the Authorization attached as EXHIBIT 1 is a

standard form that CCBC requires all applicants for employment to sign.

46.      Because it is a standard form required of all employment applicants at CCBC, the same form was signed by others that are members of the class defined below.

47.      The Plaintiff submitted her complete and accurate information, and as required on Page 2 of EXHIBIT 1, she filled in her full name, nickname, Social Security Number, Date of Birth, Address and Driver's License Number.

48.      The Authorization states in pertinent part as follows: "I hereby authorize and request any...consumer reporting agency...to furnish the Community College of Baltimore County (CCBC) with any and all information in their possession regarding me, in order that my employment qualifications may be evaluated." See EXHIBIT 1, paragraph 4.

49.      The Authorization also states that: "I understand that failure to provide the following information and my signature on this authorization will result in my removal from consideration for the position(s)." See EXHIBIT 1, paragraph 6.

50.      Plaintiff did not know the two page Authorization that she and all other CCBC applicants were required to sign is illegal, because it violates the provision of the Fair Credit Reporting Act which requires that a person may only procure a consumer report for employment purposes if there is a clear and conspicuous disclosure to the consumer in a document that consists solely of the disclosure:

> ...a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –
>
> (i) **a clear and conspicuous disclosure has been made in writing to the consumer** at any time before the report is procured or caused to be procured, **in a document that consists solely of the disclosure, that a consumer report may be obtained for employment**

**purposes; and**

(ii) **the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i))** the procurement of the report by that person.

15 U.S.C. 1681b(b)(2)(A). (Emphasis added).

51.     The form is also illegal because it contains a liability waiver which says:

I further authorize CCBC to verify the information supplied on my behalf by other persons, and I release CCBC and its agents from all liability, claims, and damages with respect to the information obtained from any or all of the sources used by CCBC.

52.     CCBC used the non-complying form in EXHBIT 1 to procure the Plaintiff's consumer report from First Advantage.

53.     CCBC used the non-complying form attached as EXHIBIT 1 to procure the consumer reports of the class members.

54.     CCBC's use of the non-complying form to procure the consumer reports of the Plaintiff and the members of the class was willful.

55.     Despite that EXHIBIT 1 does not comply with the requirements of 1681b(b)(2)(A), and violates the Fair Credit Reporting Act, First Advantage furnished the consumer reports of the Plaintiff and the class members to CCBC.

**First Advantage**

56.     According to First Advantage's own files, the Background Check was received, processed and completed in less than 7 (seven) minutes.  The report was ordered on January 26, 2017 at 1:44:39PM and it was completed on the same date at 1:51:00PM.

57.     In its consumer report, First Advantage claimed, falsely and inaccurately,

that there was a:

"HIGH PROBABILITY SOCIAL SECURITY NUMBER PROVIDED BELONGS TO
ANOTHER CONSUMER."

58.    First Advantage provided the false and inaccurate information – that there
was a "HIGH PROBABILITY SOCIAL SECURITY NUMBER PROVIDED BELONGS TO
ANOTHER CONSUMER." – to CCBC.

59.    After receiving and reviewing the consumer report from First Advantage,
CCBC told the Plaintiff that they would still like to hire her, but that they could not and
would not hire her unless and until the Plaintiff communicated with First Advantage
and caused First Advantage to remove the false and inaccurate information.

60.    The Plaintiff contacted First Advantage on numerous occasions both in
writing and by phone, and she filed a proper dispute, and provided them with copies of
her driver's license and Social Security Card as they had requested.

61.    After the Plaintiff properly disputed the report and provided copies of her
driver's license and birth certificate (as requested by First Advantage), the report was
"last updated on" February 1, 2017 at 03:20:09PM and was printed on that same date at
03:54:45PM.  Despite having received the Plaintiff's proper dispute, the consumer
report which was updated on February 1, 2017 still says: "HIGH PROBABILITY SOCIAL
SECURITY NUMBER PROVIDED BELONGS TO ANOTHER CONSUMER."

62.    The consumer report about the Plaintiff that First Advantage provided to
CCBC contained inaccurate and materially false information.

63.    A First Advantage employee directed the Plaintiff to send First Advantage a
copy of her driver's license and her Social Security card. Plaintiff followed First
Advantage's instructions, and on January 27, 2017 the Plaintiff sent the documents to

"dispute.docs@fadv.com." First Advantage told her that sending these documents would fix the problem. It did not.

64.     Over a series of phone calls that were recorded by First Advantage without the Plaintiff's affirmative consent, the employees of First Advantage ascribed the problem to different causes, and told the Plaintiff conflicting and contradictory and false information. First Advantage alleged variously that the problems was due to:

- the fault of Experian;
- a discrepancy in her birth year;
- a discrepancy in her social security number;
- her social security number was associated with another person in Experian's database;

65.     Despite the fact that the Plaintiff properly disputed the inaccurate information and provided proof of the inaccuracy, First Advantage failed to do a reasonable reinvestigation, and refused to correct the inaccurate information in the consumer report provided by First Advantage.

66.     Instead of doing a reasonable investigation, First Advantage merely ran its report again.

67.     First Advantage sent the Plaintiff a letter which states in pertinent part at page 1:

> We have completed our reinvestigation of the disputed information and have verified that the original information provided on the background report was reported accurately. Therefore, no change has been made to the background report originally produced.
> ...
>
> Thank you for giving us the opportunity to assist you.

68.     As a direct and proximate result of the continuing reporting of inaccurate and false information by First Advantage to CCBC, the Plaintiff was subjected to an adverse action in that she did not get the job from CCBC.

69.     The Plaintiff has suffered concrete and legally cognizable harm and damages, including loss of income, economic and non-economic damages, and violation of her rights pursuant to the Fair Credit Reporting Act.

70.     The noncompliance of First Advantage with the Fair Credit Reporting in relation to the Plaintiff and the failure to reinvestigate as required by the statute was willful, or in the alternative it was negligent.

71.     Until First Advantage corrects the false information, First Advantage will continue to harm the Plaintiff by exposing her to further lost income and the almost certain further denials for employment, housing, benefits and security clearances, and the fear, anxiety and anticipation of such harms, among other harms.

72.     The Plaintiff and the class members have suffered concrete injury and legally cognizable harm in the form of invasion of privacy and violation of their statutory rights caused by CCBC's use of the non-conforming authorization which contains a liability waiver to procure the consumer reports of the Plaintiff and the members of the class. "The disclosure and authorization clauses therefore work in tandem to further the congressional purpose of protecting consumers from 'improper invasion[s] of privacy.'" *Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017).

## COUNT I – VIOLATION OF § 15 U.S.C 1681b(b)(2)
### (CLASS CLAIM AGAINST CCBC)

73.     Plaintiff repeats and incorporates into this Count the factual allegations in the preceding paragraphs.

74.     The Plaintiff brings this claim against CCBC on behalf of herself and all others similarly situated.

75.     CCBC is a "person" pursuant to 15 U.S.C. 1681a(d) because it is a "corporation, . . . association, government or governmental subdivision or agency, or other entity."

76.     CCBC procured the consumer report of the Plaintiff and all other persons similarly situated, pursuant to the Authorization attached as EXHIBIT 1 which says in pertinent part:

> I hereby authorize and request any...consumer reporting agency...to furnish the Community College of Baltimore County (CCBC) with any and all information in their possession regarding me, in order that my employment qualifications may be evaluated.
> ....
> I further authorize CCBC to verify the information supplied on my behalf by other persons, and I release CCBC and its agents from all liability, claims, and damages with respect to the information obtained from any or all of the sources used by CCBC.

77.     The report procured by CCBC about the Plaintiff and all persons similarly situated was a "consumer report" within the meaning of 15 U.S.C. § 1681a(d)(1)(B) because it was a "communication of any information by a consumer reporting agency bearing on a consumer's...character, general reputation, personal characteristics, or mode of living which is used or expected to be used in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for...employment purposes."

78.     15 U.S.C. § 1681b(b)(2), provides:

> (A) . . . a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i)     a clear and conspicuous disclosure has been made in

> writing to the consumer at any time before the report is procured or caused to be procured, **in a document that consists solely of the disclosure**, that a consumer report may be obtained for employment purposes; and
>
> (ii) **the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i))** the procurement of the report by that person.

(Emphasis added).

79.    CCBC failed to provide "a clear and conspicuous disclosure...in writing...in a document that consists solely of the disclosure...."

80.    In fact, the disclosure which was provided was (1) *not* clear; (2) *not* conspicuous; and (3) *not* in a document that consists solely of the disclosure.  Instead, it was inconspicuous among other paragraphs of other disclosures in the middle of page one of a two-page document, and on the same page as an illegal liability waiver.

81.    CCBC included a liability waiver in its authorization form.

82.    CCBC willfully violated the Fair Credit Reporting Act when it obtained Plaintiff's consumer report, in violation of 15 U.S.C. § 1681b(b)(2).

83.    CCBC willfully violated the Fair Credit Reporting Act when it included a waiver of liability in the authorization form.

84.    CCBC's violation of the FCRA with respect to the Plaintiff and to the class members was willful or alternatively negligent.

85.    The FCRA, 15 U.S.C. § 1681n(a), provides for statutory and punitive damages against any person who willfully violates it:

> Any person who willfully fails to comply with any requirement imposed under this subchapter [15 U.S.C. §§ 1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1)

(A)   any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or

(B)   in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3)   in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

86.    CCBC willfully violated the privacy and statutory rights of the Plaintiff and the members of the class to receive a clear and conspicuous disclosure under § 1681b(b)(2).

87.    CCBC acted willfully because it acted intentionally and because the plain terms of the FCRA require that the disclosure consist "solely" of the disclosure (and that the consumer's written authorization may be on the disclosure document).

88.    The Plaintiff and the members of the class have been harmed and sustained concrete injury in that their right to privacy and statutory rights were invaded.

89.    Plaintiff and all others similarly situated are therefore entitled to statutory and punitive damages for CCBC's willful violation of the FCRA.

**CLASS ALLEGATIONS**

90.    Plaintiff asserts this claim individually and on behalf of a class of persons consisting of:

All persons about whom, within the 5 years prior to the filing

of this Complaint: (i) CCBC obtained a credit report for employment purposes; and (ii) to whom CCBC failed to provide a clear and conspicuous disclosure to the consumer, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; or (ii) the authorization form included a liability waiver; or (iii) the person did not authorize in writing the procurement of the report about that person.

91.     The above definition may be modified.

92.     Upon information and belief, the number of persons who fall within the class definition is in excess of 25 persons. This meets the numerosity requirement of Rule 23(a).

93.     CCBC's uses a standard form, EXHIBIT 1 with its employment applicants. Since CCBC uses a standard form for its employment applicants, whether or not it meets or violates the requirements of the FCRA present common issues of law between the Plaintiff and the class members. This establishes the commonality required by Rule 23(a).

94.     Plaintiff's has the same claim under the FCRA against CCBC as the other members have against CCBC under the FCRA. This establishes the typicality required by Rule 23(a).

95.     Plaintiff has no interests antagonistic to the class and is ready, willing and able to protect the interests of the class. Plaintiff is an adequate representative for the class.

96.     Plaintiff has retained counsel experienced in consumer law and class actions, and who are adequate to serve as class counsel.

97.     The common legal issue is also the predominate issue in this case. This establishes the predominance prong of Rule 23(b)(3)

98. A class action is superior to numerous individual actions since it will cause an orderly and expeditious administration of Class members' claims, and economies of time, effort, and expenses will be fostered and uniformity of decisions will be ensured. A class action will be manageable.

99. There are no individual questions to establish the claims of the Plaintiff and the Class Members. All claims are based on the failure of CCBC to provide proper disclosures to the Plaintiff and class members before procuring their credit reports or including a waiver of liability.

100. The Class members have suffered damages, losses, and harm identical to or substantially similar to those sustained by the named Plaintiff. This includes the invasion of their privacy and violation of their statutory rights:

> The authorization requirement, § 1681b(b)(2)(A)(ii), creates a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check. By providing a private cause of action for violations of Section 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating a "chain[ ] of causation that will give rise to a case or controversy." See Spokeo, 136 S.Ct. at 1549 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 580, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, J., concurring)).

*Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017).

101. The Class members have suffered damages, losses, and harm identical to or substantially similar to those sustained by the named Plaintiff. This includes the prohibition of a liability waiver in the authorization form.

102. The class seeks the statutory damages allowed for the willful violation of the FCRA to compensate them for their concrete injuries, plus any punitive damages that

may be awarded.

## COUNT II – VIOLATION OF 15 U.S.C. 1681i
## (INDIVIDUAL CLAIM AGAINST FIRST ADVANTAGE)

103.    The Plaintiff repeats and incorporates into this Count the factual allegations

in the preceding paragraphs.

104.    The Plaintiff brings the claim against First Advantage on an individual basis

only.

105.    FCRA, 15 U.S.C. § 1681i(a) provides:

> (1) **Reinvestigation required.--**
> (A) **In general.--** . . . if the completeness or accuracy of any
> item of information contained in a consumer's file . . . is
> disputed by the consumer and the consumer notifies the
> agency . . . the agency shall, free of charge, conduct a
> reasonable reinvestigation to determine whether the
> disputed information is inaccurate and record the current
> status of the disputed information, or delete the item from
> the file

106.    Plaintiff properly disputed the accuracy of the First Advantage Report, to

First Advantage.

107.    First Advantage asked for copies of Plaintiff's social security card and

driving license, and told her that this would solve the problem. She provided the

requested documentation, but despite this First Advantage refused to remove the

disputed information.

108.    First Advantage failed to properly consider the information provided by

Plaintiff.

109.    First Advantage failed to conduct a reasonable reinvestigation to determine

whether the disputed information was inaccurate.

110.    First Advantage was unable to explain how the information came to be on

Plaintiff's report, and persisted in blaming Experian for the problem, although Experian maintained that the mistake was made by First Advantage.

111.    Although it was unable to explain why the disputed information appeared, First Advantage refused to remove the disputed information.

112.    First Advantage's failure to conduct a reasonable reinvestigation was willful and was the consequence of First Advantage's policies and practices.

113.    If First Advantage's failure to conduct a reasonable reinvestigation was not willful, it was negligent.

114.    Plaintiff has suffered loss and damage as a result of First Advantage's failure to comply with the FCRA.  Plaintiff's damages include but are not limited to: Loss of earnings from employment by CCBC; emotional distress manifested as hopelessness, feelings of defeat, frustration, nausea, crying spells, nervousness, worry and mental anguish.

### RELIEF SOUGHT ON ALL COUNTS

WHEREFORE, the Plaintiff seeks the following relief:

On Count I, the class action claim against CCBC:

    a.  The court certify the proposed class and name Plaintiff as class representative and her counsel as class representative;

    b.  Award the Plaintiff and class the statutory damages for the concrete injury suffered and as allowed by the FCRA;

    c.  Award punitive damages against CCBC in an amount to be determined at trial;

    d.  Award costs, including attorney fees; and

    e.  Such other or further relief the nature of the Plaintiff's cause may

require.

On Count II, the individual claim against First Advantage:

    a.  Award the Plaintiff actual and statutory damages allowed by the FCRA;

    b.  Award punitive damages in an amount to be determined at trial;

    c.  Award costs, including attorney fees; and

    d.  Such other or further relief, the nature of the Plaintiff's cause may

       require.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: May 11, 2017          VIRGINIA BARTON GRIMM

By: _/s/ Peter A. Holland_____
    Peter A. Holland
    Fed. Bar No. 10866
    Emanwel J. Turnbull
    Fed. Bar No. 19674
    THE HOLLAND LAW FIRM, P.C.
    P.O. Box 6268
    Annapolis, MD 21401
    Telephone: (410) 280-6133
    Facsimile: (410) 280-8650
    peter@hollandlawfirm.com

    Scott C. Borison
    Fed Bar No. 22596
    Borison@legglaw.com
    Legg Law Firm, LLP
    1900 S. Norfolk Rd. Suite 350
    San Mateo CA 94403
    Borison@legglaw.com

    MD Office:
    5235 Westview Dr. Suite 100
    Frederick, Maryland 21703
    (301) 620-1016
    Fax: (301) 620-1018

*Counsel for Plaintiff*